GEORGE W. GRAESER, Appellee, v. SAM GORDON et al., Appellants.

**FRAUDS, STATUTE OF:** Agreement to Procure Easement. An agreement to *procure* an easement is not within the statute of frauds. Evidence reviewed, and held to show that such was the contract.

*Appeal from Polk District Court.*—THOMAS J. GUTHRIE, Judge.

NOVEMBER 16, 1920.

ACTION for services rendered, resulted in judgment as prayed. The defendants appeal.—*Affirmed.*

*Stipp, Perry, Bannister & Starzinger,* and *Guy S. Calkins,* for appellants.

*Fred F. Keithley,* for appellee.

LADD, J.—The petition alleges that defendants employed plaintiff to obtain an easement over "the south thirty feet of Holcomb Avenue west across Outlot A, lying between Home Park Addition and the east bank of the Des Moines River, now included in the city of Des Moines, Iowa," to be used in conveying ice from the river to icehouses, and that, for services so rendered, defendants promised to pay plaintiff the sum of $300; that plaintiff procured the said easement for defendants on conditions approved by them, and demanded judgment accordingly. Defendants interposed a general denial, and pleaded that the contract, if any, was "for the creation, transfer, and conveyance of an interest in real estate," and that the contract was not in writing, and may not be proven orally.

The only issue raised on this appeal is whether the alleged agreement was for services to be rendered, or for the creation or transfer of an interest in land. Appellant contends that the evidence established the latter, while appellee insists that, at most, the evidence was in conflict and the issue was rightly submitted to the jury. Plaintiff owned a right of way easement from the Des Moines River near Sixth Avenue in Des Moines back to some lots. The city had condemned this for city purposes in 1915, and plaintiff had appealed to the district court. He had contemplated its use for harvesting and storing ice, and, pending appeal, had entered negotiations through the city attorney, who had suggested giving him another outlet or right of way to the river. Thereupon, plaintiff approached defendants concerning the purchase of their lots, and, being unable to acquire these, told Gordon "what I wanted the lots for; I told him I could get a right of way for them, for the ice business. The termination of our negotiations was that he was to pay me $300 to procure for them this right of way for icehouse purposes. At that time, I told Gordon I would have to get the easement, and that I could get it at that place."

Thereupon, he arranged with the city attorney that the city should convey an easement from the river to defendant's lots, and Gordon referred him to the late Roy Cubbage, as representing him. On cross-examination, the witness testified:

"I had something coming from the city, and I wanted to turn that to him. I could get certain concessions from the city in settlement of my condemnation suit, and I would get it for him. I told him what I had in prospect. I told him I had a right of way to the river to sell, and that I could get it through their lots. Gordon agreed to pay me $300 if I could get it."

A deed conveying the easement from the city to plaintiff, prepared by Cubbage at Gordon's instance, was executed in behalf of the city in April, 1916, and plaintiff dismissed his appeal from the condemnation proceedings. Thereupon, plaintiff told Gordon that the former had the deed, "and had prepared a deed from me, transferring my right that I had from the city, and that I was ready to close the deal." Gordon replied that a long time had passed since negotiations had begun, and that they did not believe they wanted it now, as the saloons had gone out of business, and there was no longer a market for river ice; and later, he said that he would be willing to go through, but Levitt would not, for the reason stated, and that he did not feel like doing so alone. Plaintiff's deed of the easement from himself to defendants had been prepared, save acknowledging, but was not delivered. On recross-examination, plaintiff was asked:

"Isn't this what you agreed to do, to obtain for him from the city of Des Moines an easement? A. Yes, sir, getting him something he couldn't get himself, that was due to me. Q. That is true, isn't it? A. Yes, sir. Q. What you contracted with him was, as you claim, to obtain for him from the city of Des Moines an easement? A. Not specifically from the city of Des Moines. Q. You say so in your petition, and you swore to that, didn't you? A. Possibly."

Cubbage not only prepared the conveyance for Gordon,

but, at his instance, did what he could to procure its execution, or, as Cubbage testified:

"Gordon asked me to take it up myself with the city council, and get through the best deed I could.    *    *    *    Q. The sum and substance of it is that Exhibit 1 represents the result of your efforts to find out definitely the unequivocal position of the city of Des Moines as to what they were willing to do? A. This represents the sum total of what I could get out of them, and I worked hard at it."

Gordon denied having any conversation with plaintiff in 1915, concerning procuring an easement for defendants, and said that he had not seen the city's deed to plaintiff until the morning of the trial, but had seen a copy, a few days before; that he had also seen a paper covering everything, previously prepared by Cubbage, which the city rejected, and showed it to plaintiff; that, thereafter, he told him Levitt was determined to have a general easement, covering everything, including the pumping of gravel, putting up boathouses, fishing, and the like; and that the supposition was that the city was to convey such an easement; and that, on inquiry by plaintiff as to why they did not go through with the proposition, he had answered that "it didn't cover all the conveniences we expected." But this witness had made an affidavit:

"That defendants were desirous of securing from the city of Des Moines the right to go upon and over the strip of ground described in plaintiff's petition, from certain premises adjoining said strip which they jointly owned, to the Des Moines River, for the purpose of harvesting ice, and for the purpose of taking sand and gravel from said river, and for any and all purposes whatsoever, and that the right to have access to said river for obtaining sand and gravel therefrom was the principal and most important right that defendants wished to obtain; that defendants orally agreed with plaintiff that they would pay him $300 if he would secure for them from said city an unlimited right of access to said river across said strip of ground for any and all purposes whatsoever, and especially for obtain-

ing sand and gravel; that plaintiff never has secured said rights from the city of Des Moines, and is. unable to do so, and has never offered same to the defendants or either of them; that the defendants nor either of them ever offered or agreed to pay plaintiff any sum whatsoever for obtaining for them from said city the right only to convey ice across said strip of ground, and never employed plaintiff to obtain for them such right."

In considering this evidence, it is to be borne in mind that the city only could grant the easement proposed to be acquired. The plaintiff had no interest therein, nor was he in a situation to create or transfer any. He did not retain that formerly belonging to him, which had been condemned. The only right he retained was the enhancement of damages, assessed as the value of the property appropriated for the public use. If he is to be believed, he did not undertake to create or transfer any interest in the realty of the city. All he undertook was to procure the easement from the city for defendants; and this is precisely what Gordon might have been found, from his affidavit, to have understood he was to do. True, he negotiated with the city attorney, and in pursuance thereof dismissed his appeal; but the course he should pursue in obtaining the easement was not prescribed by Gordon, nor was it inconsistent with the rendition of services that, in the interest of defendants, their attorney had the conveyance made to plaintiff, instead of direct to them. This did not necessarily make him grantee for his own benefit, but, under agreement alleged, he would thereby become a trustee of a resulting trust, and hold the title for defendants. Gordon admits in his affidavit "that defendants agreed with plaintiff that they would pay him. $300 if he would secure for them from the city access to said river across said strip of ground for any and all purposes whatsoever, and especially for obtaining sand and gravel," but denies any agreement in his testimony; while plaintiff says he undertook to obtain only a right of way for the ice. In either event, the contract might have been found to have been for services,

and not for the creation or transfer of an interest in land. An agreement to procure a conveyance is not within the statute of frauds. *Bannon v. Bean,* 9 Iowa 395; *Cooley v. Osborne,* 50 Iowa 526. The jury might well have found the contract to have been for services such as were rendered, and not for the purchase of an easement. See *Miller v. Davis,* 187 Iowa 1148.—*Affirmed.*

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.